## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | |
|---|---|
| **HILDA L. SOLIS, Secretary of Labor,** ) <br> **United States Department of Labor,** ) <br> ) <br> **Plaintiff,** ) <br> v. ) <br> ) <br> **EL MATADOR, INC., EL CAPORAL, INC.,** ) <br> **Corporations, and DOLORES ONATE and** ) <br> **RICARDO ONATE, Individuals,** ) <br> ) <br> **Defendants.** ) | **Case No. 08-CV-2237** |

## **OPINION**

This case is before the court for ruling on the Motion for Summary Judgment Against Dolores Onate and Ricardo Onate (#82) filed by Plaintiff, Hilda L. Solis, Secretary of Labor. Defendants Dolores Onate (Dolores) and Ricardo Onate (Ricardo) have not filed a Response to the Motion. This court has carefully considered Plaintiff's arguments and the documents filed. Following this careful and thorough consideration, Plaintiff's Motion for Summary Judgment (#82) is GRANTED.

FACTS[1]

El Matador, Inc. and El Caporal, Inc. are corporations which operate restaurants in Decatur, Illinois. The restaurant operated by El Caporal and the two restaurants operated by El Matador were full-service establishments that prepared Mexican-style food and were open to the public. Employees at all three restaurants handled goods that moved in interstate commerce. In September 2007, the Wage and Hour Division of the U.S. Department of Labor began an investigation of both

---

[1] This court will set out only a short, general summary of the 171 undisputed facts listed by Plaintiff in her Motion for Summary Judgment.

corporations under the Fair Labor Standards Act (FLSA). The investigation covered the period from January 1, 2006, to January 29, 2008. During calendar years 2006, 2007, and 2008, the annual dollar volume of each of the three restaurants operated by the corporations exceeded $500,000.

Dolores was the sole owner and president of El Matador during the investigatory period and also owned 75% of El Caporal during the investigatory period. She was president of El Caporal in 2007 and 2008 and had check writing authority for El Caporal's corporate account. She, along with Robin Reyes and Arturo Alvarez, was responsible for the day-to-day management of the restaurant operated by El Caporal. Dolores and Ricardo, who is Dolores' brother, determined the policies, practices, and procedures relating to compensation, including compensation for overtime, paid to El Caporal employees. Dolores and Ricardo were responsible for signing and distributing paychecks to El Caporal employees. They also checked El Caporal's employees' time records for accuracy. Dolores hired Ricardo to manage one of the restaurants operated by El Matador. Ricardo directed the restaurant employees and set the schedule for the restaurant employees during the investigatory period. He also hired employees during this time period. Ricardo was involved in ensuring that minimum wage and overtime were paid to the restaurants employees and was responsible for paperwork at the restaurant. Dolores and Ricardo were responsible for the day-to-day management of both of the restaurants operated by El Matador. They determined the policies, practices, and procedures related to compensation, including compensation for overtime, paid to El Matador employees.

The investigation found that some of the employees at all three restaurants operated by El Caporal and El Matador did not receive any proceeds from paychecks they received, they only received tips from the customers they served. They were required to return the paychecks they were

2

given to the restaurant. After the Wage and Hour investigation commenced, Dolores changed the pay policy at the El Caporal restaurant and servers were allowed to keep their paychecks. The investigation also found that employees who did not work as servers were not paid minimum wage or overtime compensation. Employees were told by Dolores not to punch in earlier than 9:00 a.m. even if they began working before then. The Wage and Hour Division's investigation determined that Dolores and Ricardo withheld minimum wages and overtime compensation due to 34 of their employees at the two El Matador restaurants during the investigatory period in the amount of $387,429.87. The Wage and Hour Division's investigation also determined that Dolores and Ricardo withheld minimum wages and overtime compensation due to 30 employees at the El Caporal restaurant during the investigatory period in the amount of $187,421.41. Plaintiff provided detailed documentation regarding how the investigation determined these amounts.

The Wage and Hour Division had previously conducted an investigation of one of the restaurants operated by El Matador during October and November 2005. During the previous investigation, Wage and Hour Investigator Amy DeBisschop gave Ricardo the following materials: (1) The Handy Reference Guide to the FLSA; (2) a copy of 29 C.F.R. Part 516; (3) a copy of 29 C.F.R. Part 785; (4) a nontechnical Wage and Hour overtime publication; (5) a Wage and Hour FLSA poster; and (6) a Wage and Hour FMLA poster. DeBisschop sent enough publications for the two El Matador restaurants and the El Caporal restaurant. DeBisschop urged Ricardo to share the information he learned during the investigation with the other two restaurants. The evidence showed that Wage and Hour posters were posted at the restaurants.

PROCEDURAL HISTORY

On October 3, 2008, Plaintiff filed a Complaint (#1) against El Matador Inc., El Caporal Inc.,

Dolores and Ricardo. On November 20, 2008, Plaintiff filed an Amended Complaint (#4) against the same four Defendants. In the Amended Complaint (#4), Plaintiff was seeking to recover unpaid minimum wage and overtime compensation owing to Defendants' employees, together with an equal amount as liquidated damages. Plaintiff also sought to enjoin Defendants from violating the FLSA. On December 29, 2008, Defendants, through counsel, filed an Answer (#6) to the Amended Complaint. Additional attorneys entered their appearance on behalf of Defendants on March 18, 2009, and April 7, 2009.

The parties had numerous discovery disputes and Magistrate David G. Bernthal entered Orders (#25, #27, #38, #43, #44) resolving the disputes. On May 3, 2010, Defendants' Attorneys filed a Motion to Withdraw as Counsel of Record for Defendants (#61). On July 13, 2010, a hearing was held before Judge Bernthal. Judge Bernthal granted the Motion (#61) and allowed Defendants' attorneys to withdraw from the case. Dolores and Ricardo stated that they were seeking to hire new counsel, but would proceed pro se if necessary. On August 16, 2010, a hearing was held before Judge Bernthal. Dolores and Ricardo appeared without counsel. Judge Bernthal noted that the corporate defendants were unrepresented. Plaintiff then made an oral motion for entry of default as to the corporate defendants. Judge Bernthal granted the motion and default was entered as to El Caporal and El Matador.

On September 28, 2010, Plaintiff filed a Motion for Default Judgment as to El Caporal, Inc. (#64) and a Motion for Default Judgment as to El Matador, Inc. (#65). Supporting documentation was attached to both motions. Plaintiff sought judgment against El Caporal and El Matador for the amount of the minimum wages and overtime compensation due to their employees, plus an equal amount for liquidated damages. On October 5, 2010, this court entered Orders (#66, #67) granting

4

the Motions for Default Judgment. On October 19, 2010, an Amended Judgment (#73) was entered. Default Judgment was entered in favor of Plaintiff and against Defendant El Matador, Inc. in the total amount of $774,859.74 (comprising the $387,429.87 due to its employees plus $387,429.87 in liquidated damages). Default Judgment was entered in favor of Plaintiff and against Defendant El Caporal, Inc. in the total amount of $374,842.82 (comprising the $187,421.41 due to its employees plus $187,421.41 in liquidated damages). The Amended Judgment was served on Dolores on November 30, 2010 (#75) and was served on Ricardo on November 30, 2010 (#80).

On February 11, 2011, Plaintiff filed a Motion for Summary Judgment (#82), with attached exhibits, seeking the entry of judgment in favor of Plaintiff and against Dolores and Ricardo (hereinafter collectively referred to as Defendants). Plaintiff filed a Certificate of Service (#83) stating that the Motion and the exhibits were served upon Defendants by U.S. mail. On March 3, 2011, the clerk's office sent a Notice to Dolores (#84) and a Notice to Ricardo (#85). The Notices informed the pro se Defendants that a case dispositive motion had been filed and that they had 21 days to respond to the motion. The Notices (#84, #85) stated, "[i]f you do not respond, the motion, if appropriate, will be granted and the case will be terminated without a trial." The Notices (#84, #85) also stated that, "[u]nder the court's local rules, a motion is deemed to be uncontested if no opposing brief is filed." A copy of Rule 56 of the Federal Rules of Civil Procedure and a copy of Rule 7.1 of the Local Rules of the Central District of Illinois were attached to both Notices. As previously noted, neither Dolores nor Ricardo filed a Response to the Motion for Summary Judgment (#82).

ANALYSIS

I. SUMMARY JUDGMENT STANDARD

5

Rule 7.1(D)(2) of the Local Rules of the Central District of Illinois provides, "[w]ithin 21 days after service of a motion for summary judgment, any party opposing the motion must file a response. A failure to respond will be deemed an admission of the motion." The Seventh Circuit has repeatedly held that such a rule is "entirely proper." Doe v. Cunningham, 30 F.3d 879, 882 (7th Cir. 1994). Further, when the non-movant does not respond to the movant's statement of facts, the non-movant concedes the movant's version of the facts. Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 922 (7th Cir. 1994); Columbia Pictures Indus., Inc. v. Landa, 974 F. Supp. 1, 3 (C.D. Ill. 1997). This court recognizes that Dolores and Ricardo have been proceeding pro se since their attorneys were allowed to withdraw from the case on July 13, 2010. However, they were notified that a case dispositive motion had been filed and the consequences of failing to respond to the summary judgment motion. See Timms v. Frank, 953 F.2d 281, 285 (7th Cir. 1992). They were also provided with a copy of the applicable rules.

In any case, a party's failure to submit a timely response to a motion for summary judgment does not automatically result in summary judgment for the moving party. LaSalle Bank Lake View v. Seguban, 54 F.3d 387, 392 (7th Cir. 1995); see also Archer Daniels Midland Co. v. Whitacre, 60 F. Supp. 2d 819, 823 (C.D. Ill. 1999). It remains "the movant's burden to demonstrate that no genuine issue of material fact exists and that he is entitled to summary judgment as a matter of law." Doe, 30 F.3d at 883. Accordingly, the district court must make the further finding that summary judgment is proper as a matter of law. LaSalle Bank, 54 F.3d at 392, quoting Wienco Inc. v. Katahn Assocs., Inc., 965 F.2d 565, 568 (7th Cir. 1992).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a);

6

see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, a district court "has one task and one task only: to decide, based upon the evidence of record, whether there is any material dispute of fact that requires a trial." Waldridge, 24 F.3d at 920.

## II. MERITS OF THIS CASE

In this case, this court concludes that Plaintiff has provided ample supporting documentation to support her statement of undisputed facts and has shown that, based upon the undisputed facts, she is entitled to judgment against Defendants as a matter of law. This court agrees with Plaintiff that the evidence is sufficient to show that both Dolores and Ricardo are individual employers under section 3(d) of the FLSA. See 29 U.S.C. § 203(d). The evidence shows that they each had managerial responsibilities and substantial control of the terms and conditions of the workers' employment at the El Matador restaurants and the El Caporal restaurant. This court further concludes that the restaurants operated by El Matador and El Caporal are a covered enterprise under the FLSA. See 29 U.S.C. § 203(r)(1). The evidence clearly supports the conclusion that all three restaurants were operated by Defendants as one enterprise in that they were engaged in related activities, operated under the common control of Defendants, and had a common business purpose. In addition, Plaintiff presented ample evidence that the enterprise was engaged in interstate commerce. See 29 U.S.C. § 203(s)(1)(A).

The evidence shows that Defendants willfully committed minimum wage, overtime, and record keeping violations under the FLSA. The evidence clearly supports a finding that Defendants violated the requirement to pay minimum wage. See 29 U.S.C. § 206. Servers at the El Matador restaurants and at the El Caporal restaurant were subject to a general, although not exclusive, pay practice in which the only compensation they received was tips from their customers. As part of this

general pay practice, most servers were issued paychecks that they endorsed back to their restaurants; the servers kept none of the proceeds from those paychecks. Further, Defendants are not entitled to any tip credit under 29 U.S.C. § 203(m) because Defendants did not provide notice to tipped employees that part of their minimum wage could be satisfied with tips from customers. Because of their failure to inform the tipped employees of their intent to use the tip credit, Defendants are liable for the full minimum wage due to its employees, not just the amount per hour they failed to pay in cash wages.

The evidence also shows that Defendants committed minimum wage violations with regard to employees who were not members of the wait staff. The evidence showed that some of these employees were paid a certain cash amount which, based upon the number of hours they worked, was below the required minimum hourly rate.

Defendants also willfully committed overtime violations under the FLSA. See 29 U.S.C. § 207(a)(1). Defendants' overtime violations with respect to the servers is clear cut in that certain servers were not paid any regular cash wage, and some of those servers also worked more than 40 hours per workweek. Because Defendants paid them nothing, Defendants did not pay them the additional half-time required for those hours in excess of 40 per workweek they had worked. Defendants' overtime violations with respect to non-wait staff employees is equally clear cut in that certain employees were paid a set sum weekly or semi-monthly, they worked more than 40 hours per week, and the sum they received did not include a half-time premium for hours worked over 40.

The court further agrees that the evidence shows that Defendants willfully committed record keeping violations under the FLSA. The FLSA requires employers to maintain records of hours worked each workday and total hours worked each workweek. See 29 U.S.C. § 211(c); 29 C.F.R.

8

§ 516.2(a)(7). Defendants failed to maintain accurate records of hours worked for all employees, and they maintained none of the required records for tipped employees. Defendants instituted a pay practice in which servers endorsed their paychecks to the restaurant and only received tips from the clientele. Although payroll records reflect that paychecks to servers were cashed, the servers received none of the check proceeds. Some employees were instructed not to record all of the hours they worked. These intentional efforts to conceal Defendants' noncompliance with the FLSA resulted in false payroll records and demonstrate that the violations of the FLSA were willful.

Because the undisputed evidence shows that Defendants are both employers under section 3(d) of the FLSA, they are therefore individually liable for all of the minimum wage, overtime, and record keeping violations that were committed. Defendants are therefore liable for the amount of minimum wage and overtime compensation owed to the employees of El Matador and El Caporal in the amount of $574,851.28 (consisting of $387,429.87 due to the employees of El Matador and $187,421.41 due to the employees of El Caporal). This court further concludes that Plaintiff has shown that she is entitled to liquidated damages in this case. The FLSA makes liquidated damages mandatory, unless an employer proves it acted in good faith with reasonable grounds to believe that its actions did not violate the FLSA. 29 U.S.C. § 260; Shea v. Galaxie Lumber & Constr. Co., 152 F.3d 729, 733 (7th Cir. 1998); Bankston v. State of Ill., 60 F.3d 1249, 1254 (7th Cir. 1995). Defendants have not asserted that they acted in good faith with reasonable belief that their actions did not violate the FLSA, and the record contains no evidence to support such a claim. Accordingly, Plaintiff is entitled to $574,851.28 in liquidated damages along with the $574,851.28 in compensatory damages, for a total of $1,149,702.56. This court further concludes that Plaintiff is entitled to an injunction enjoining Defendants from any future FLSA violations under 29 U.S.C. § 217.

IT IS THEREFORE ORDERED THAT:

(1) Plaintiff's Motion for Summary Judgment (#82) is GRANTED.

(2) Judgment is entered in favor of Plaintiff and against Defendants Dolores Onate and Ricardo Onate in the total amount of $1,149,702.56. Defendants are also enjoined from committing further violations of the FLSA.

(3) The final pretrial conference scheduled for June 14, 2011, at 1:30 p.m. and the bench trial scheduled for June 27, 2011, at 9:00 a.m. are hereby VACATED.

(4) This case is terminated.

ENTERED this 3rd day of May, 2011

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE